# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JASON BISHOP | § | |
| | § | |
| v. | § | CASE NO. 4:14-CV-608 |
| | § | Judge Mazzant |
| THE CITY OF DENTON, TEXAS, | § | |
| and DARIUS M. PORTER | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff's Opposed Objections to (and Motion to Strike) Defendant's Summary Judgment Evidence (Dkt. #66), and Defendant Darius M. Porter's Motion to Strike Plaintiff's Summary Judgment Evidence and Objection to Same (Dkt. #78). Having considered the relevant pleadings, the Court finds that Plaintiff's motion is denied in part, and Defendant's motion is denied in part.

## BACKGROUND

On July 19, 2014, Plaintiff Jason Bishop ("Bishop") was on the campus of the University of North Texas when he was questioned by officers and subsequently arrested for public intoxication (Dkt. #33). Bishop alleged that "[t]he [arresting] officers had no probable cause or reasonable suspicion to believe that Bishop was or had committed a crime" (Dkt. #31). While Bishop was being booked at the Denton City Jail, Defendant Darius M. Porter ("Porter") and Bishop exchanged words (Dkt. #49-1). The parties disagree as to whether or not Bishop was being compliant with Porter's attempt to search Bishop. After Bishop was allegedly non-compliant, Porter and Spandan Desai ("Desai") stood Bishop up against a counter (Dkt. #33; Dkt. #49). Bishop claims that in the course of this movement, his head hit the counter causing

1

him injury (Dkt. #31). Porter argues that they were moving Bishop so that they could search him, and that Bishop's head did not hit the counter (Dkt. #57 at p. 2)

Next, Porter and Desai moved Bishop from the "book-in" area to a detoxification cell (Dkt. #33). As they were entering the cell, Porter used his leg to perform a "take down technique" while each jailer was still holding one of Bishop's arms (Dkt. #49-1). This motion caused Bishop's head to strike the ground and he sustained a head injury (Dkt. #49-1). Bishop was transported to a local hospital for treatment (Dkt. #33).

On August 7, 2015, Bishop filed his Second Amended Complaint against The City of Denton, Texas and Porter alleging excessive force, failure to train, and false arrest (Dkt. #27). On August 10, 2015, Porter filed his first motion for summary judgment (Dkt. #33) and on August 24, 2015 Bishop filed a response (Dkt. #49). On September 9, 2015, Bishop filed his Opposed Objection to (and Motion to Strike) Porter's Summary Judgment Evidence (Dkt. #66) to which Porter filed a response on September 25, 2015 (Dkt. #76). On September 25, 2015, Porter filed a Motion to Strike Summary Judgment Evidence and Objections to the Same (Dkt. #78) and Porter filed a response on October 9, 2015 (Dkt. #96).

**LEGAL STANDARD**

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993), the Supreme Court instructed courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove by a preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590-91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exhaustive list of factors that courts may use in evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593-94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert,* 509 U.S. at 594.

The *Daubert* factors are not "a definitive checklist or test." *Daubert,* 509 U.S. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id*. at 594. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St*. *Martin v*. *Mobil Exploration & Producing U.S.*, *Inc*., 224 F.3d 402, 406 (5th Cir. 2000).

## ANALYSIS

*Plaintiff's Opposed Objections to (and Motion to Strike) Defendant's Summary Judgment Evidence (Dkt. #66)*

Bishop asserts that Porter's Summary Judgment evidence is not admissible on a variety of grounds. Porter argues that several of Bishop's arguments are too broad, and therefore should not be considered (Dkt. #76 at ¶ 5). However, one argument that Bishop does state with specificity is that Porter's summary judgment evidence is not admissible because it was submitted with Porter's reply. This violates Local Rule CV-56(d), which states that "proper summary judgment evidence means excerpted copies of pleadings, depositions, documents, electronically stored information, answers to interrogatories, admissions, affidavits or declarations, stipulations (including those made for purposes of the motion only), and other admissible evidence **cited in the motion for summary judgment or the response thereto**." (emphasis added). Thus, the affidavits and the medical records that Porter submitted with his reply are not admissible (Dkt. #65-1; Dkt. #65-2; Dkt. #65-3).[1]

Porter also attached a copy of the surveillance video to his summary judgment response (Dkt. #65-3). Porter maintains that this is a better and more complete version of the video that Bishop previously attempted to submit as an exhibit (Dkt. #78 at pp. 12-13). The exhibit was submitted along with a certificate from the city secretary swearing that it is a true and accurate copy of a surveillance video (Dkt. #65-3). Thus, the Court will allow the surveillance video to be included within the summary judgment evidence.

---

[1] Bishop argues that Porter's reply was submitted late. However, the reply was timely filed. *See* Local Rule CV-7(f); Local Rule CV-6.

*Defendant Darius M. Porter's Motion to Strike Plaintiff's Summary Judgment Evidence and Objection to Same*

Staton Affidavit

Porter maintains that the affidavit of Stan V. Staton should be excluded (Dkt. #78 at pp. 2-9). "When expert testimony has been challenged, it is incumbent upon the court to conduct a preliminary fact-finding to determine whether the expert is qualified to render the proffered opinions and whether the substance of the testimony is both reliable and relevant." *Allison v. NIBCO, Inc.*, No. 9:02-CV-172, 2003 WL 25685229, at *1 (E.D. Tex. May 21, 2003). Courts must also articulate the basis for admitting expert testimony. *See Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001). To be reliable, and therefore admissible under Rule 702 of the Federal Rules of Evidence, expert testimony as to a scientific, technical or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles or methods; (4) and have reliably applied the principles and methods to the facts. FED. R. EVID. 702. "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et. alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).

The party offering the expert testimony has the burden of establishing by a preponderance of the evidence that the challenged testimony is admissible. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). It is not necessary for the proponent to prove that the expert's testimony is correct, but the proponent must prove the testimony is reliable. *Id*. A witness' experience, studies and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony. *Perez v. City of Austin*, No. A-07-CA-044 AWA, 2008 WL 1990670, at *10 (W.D. Tex. May 5, 2008); *see also Pipitone*, 288 F.3d at 247

(citing *Kumho*, 526 U.S. at 137 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")).

Porter argues that Staton's is not qualified and his methodology is unclear. In response, Bishop argues that the bases of Staton's opinions is reliable and refers to the extensive experience of Staton, specifically his 18 years of teaching experience and his 40 years of law enforcement related experience (Dkt. #96 at p. 3). Furthermore, Bishop maintains that Staton's opinions are reliable because they are based not only on his experience in law enforcement and booking inmates, but also on relevant facts surrounding this particular incident, including witness statements and the Denton Police's incident report (Dkt. #69 at p. 10). Porter argues that Staton's experience in law enforcement is distinct from a jailor's experience, and therefore he is not qualified to offer expert testimony in this matter.[2] Bishop responds that "[f]or the first half of Stanton's 25 year career . . . all arrested persons were booked into the city jail by the arresting officer . . . the arresting officer conducted the search, removed all of the inmate's property, and turned them over to the jail for fingerprinting and photographs" (Dkt. #96 at pp. 3–4). Porter also argues that Staton's affidavit should be excluded because it does not describe his methodology (Dkt. #78 at p. 7). However, Staton's report specifically mentions the standards he applied to the facts in order to form his opinions.[3]

Porter also argues that Staton's opinions are based upon information that is not reasonably relied upon by experts in the applicable field. In particular, Porter points to the following materials: 1) Plaintiff's complaints; 2) Denton Police Department investigation

---

[2] Porter argues that it is inappropriate for Staton to discuss the "reasonableness" of Porter's actions. However, Federal Rule of Evidence 704 permits an expert witness to give testimony that embraces an ultimate issue. FED. R. EVID 704. Porter also argues that the legal conclusions stated by Staton as coming from the Denton Police Department's Investigation Report should be disregarded and the Court agrees. (Dkt,. 49-1 at ¶ 15) (stating that the force used . . . was unlawful).

[3] Staton's affidavit states that he relied upon the *Graham* factors in forming his opinion about whether or not Porter acted as a reasonable officer in the situation at issue (Dkt. #49-1 at ¶ 12). Staton goes through each of the factors individually within his analysis. Thus, Staton's affidavit sufficiently describes his methodology.

summary/witness statements; 3) "Internet links" to news reports; and 4) Porter's employee discipline notice.[4] Porter argues that because these sources might have potential bias, they are inappropriate for Staton to consider when applying his methodology.[5] This argument goes to the weight of the evidence and not the admissibility of it. As *Daubert* noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). "[T]he jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

The Court finds that Stanton's affidavit is reliable and therefore, admissible. Staton explained his methodology for evaluating the force used and then applied his method to the facts (Dkt. #49-6). Porter's arguments about the facts upon which Staton's report is based goes to the weight of his testimony and not its admissibility. Staton's affidavit is admissible summary judgment evidence.

Photograph of Bishop's Injuries

Porter objects that the photograph is unauthenticated and inadmissible hearsay (Dkt. #78

---

[4] Bishop argues that Staton's opinions are unreliable because they are based on hearsay and, "Staton's lack of qualifications should bar his use as a conduit for inadmissible evidence" (Dkt. #78 at p. 8). However, as discussed above, the Court finds that Staton is sufficiently qualified, and thus he can rely upon otherwise inadmissible evidence under FED. R. EVID 703.

[5] According to the affidavit, Staton also relied upon the following materials: "Defendant's Discovery Responses . . . Porter's Professional Standard Statement . . . Training Records for Darius Porter . . . Internet links to jail surveillance video of this event (w/out sound) . . . Denton Police Department policies on jail operations and use of force . . . Surveillance video of this event with sounds . . . Porter's performance evaluations(4) . . . Spandan Desai's supplement (entered/written by Porter?)" (Dkt. #49-1).

at p. 9). The photographs are authenticated by Bishop's Affidavit (Dkt. #49-4 at ¶ 11) and they do not constitute hearsay.

Administrative Investigation Report

Porter objects that the investigation report is not authenticated and constitutes inadmissible hearsay (Dkt. #78 at pp. 9-10). However, the report is authenticated because it was produced by the Defendants (Dkt. #96 at p. 6). To the extent that the document contains hearsay, it is admissible as an opposing party's admission. FED. R. EVID. 801(d)(2)(A). Porter also argues that the report's, "probative value is substantially outweighed by the prejudicial effect of the author's non-expert imprecise use of critical legal terms such as 'objectively reasonable'" (Dkt. #78 at p. 9). The Court finds that the prejudicial effect of the report does not outweigh its probative value because the report is not making a legal determination, but is evaluating whether or not Porter's actions comported with the department's policies. Lastly, Porter objects because he argues that the report constitutes an expert opinion and the author has not been designated as an expert (Dkt. #78 at p. 9). As explained above, the Court is not admitting the report as an expert report.

Bishop's Affidavit

Porter objects to the admission of any portion of Bishop's affidavit as summary judgment evidence (Dkt. #78 at p. 10). Specifically, Porter objects to Bishop's factual descriptions which he argues are outside of Bishop's personal knowledge (Dkt. #78 at pp. 10-11). The Court finds that this constitutes admissible opinion testimony, except for that part which states speculative assertions about Porter's character and desires (Dkt. #78 at p. 11; Dkt #49-4 at ¶ 12). Porter also objects to the portions of Bishop's affidavit which state "legal conclusions" (Dkt. #78 at p. 10).

The Court agrees that this is improper testimony and strikes it from the record (Dkt. #49-1 at ¶ 6).

Porter also argues that portions of the video contradict Bishop's testimony to such an extent that it renders Bishop's testimony inadmissible (Dkt. #78 at p. 11). However, the Court finds that the video does not differ from Bishop's testimony to the extent described in *Scott v. Harris*. 550 U.S. 372, 380-381 (2007) ("When opposing parties tell two different stories and one is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on motion for summary judgment."). Since Bishop's description of events is not blatantly contradicted by the record, Bishop's affidavit should not be stricken.

<u>Staton Report</u>

Porter objects to various portions of Staton's report that contain Staton's opinions (Dkt. #78 at p. 13). For the reasons mentioned above, these opinions are admissible as expert opinion testimony. Porter also objects to the admissibility of statements and opinions allegedly stated by Porter that are within Staton's report (Dkt. #78 at p. 13). To the extent that the document contains hearsay, it is admissible as an opposing party's admission. *See* FED. R. EVID. 801(d)(2)(A). Lastly, Porter objects to Staton's assertion that Porter violated any constitutional right (Dkt. #78 at p. 14). The Court strikes this assertion (Dkt. #49-6 at ¶ 8).

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Opposed Objections to (and Motion to Strike) Defendant's Summary Judgment Evidence (Dkt. #66) is hereby **DENIED in part** and Defendant Darius M. Porter's Motion to Strike Plaintiff's Summary Judgment Evidence and Objection to Same (Dkt. #78) is hereby **DENIED in part**.

**SIGNED this 8th day of December, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE