# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JASON BISHOP | § § § | |
| v. | § § § | CIVIL ACTION NO 4:14-CV-608<br>Judge Mazzant |
| THE CITY OF DENTON, TEXAS<br>and DARIUS M. PORTER | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Darius M. Porter's First Motion for Summary Judgment (Dkt. #33). After reviewing the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

On July 19, 2014, Plaintiff Jason Bishop ("Bishop") was on the campus of the University of North Texas when he was questioned by officers and subsequently arrested for public intoxication (Dkt. #33). Bishop alleged that "[t]he [arresting] officers had no probable cause or reasonable suspicion to believe that Bishop was or had committed a crime" (Dkt. #31). While Bishop was being booked into the Denton City Jail, Defendant Darius M. Porter ("Porter") and Bishop exchanged words (Dkt. #49-1). The parties disagree as to whether or not Bishop was being compliant with Porter's attempt to search Bishop. After Bishop was allegedly non-compliant, Porter and Spandan Desai ("Desai") stood Bishop up against a counter (Dkt. #33; Dkt. #49). Bishop claims that in the course of this movement, his head hit the counter causing him injury (Dkt. #31). Porter argues that they were moving Bishop so that they could search him, and that Bishop's head did not hit the counter (Dkt. #53 at pp. 2-3)

Next, Porter and Desai moved Bishop from the "book-in" area to a detoxification cell

(Dkt. #33). As they were entering the cell, Porter used his leg to perform a "take down technique" while each jailer was still holding one of Bishop's arms (Dkt. #49-1). This motion caused Bishop's head to strike the ground and he sustained a head injury (Dkt. #49-1). Bishop was transported to a local hospital for treatment (Dkt. #33).

On August 7, 2015, Bishop filed his Second Amended Complaint against The City of Denton, Texas, and Porter alleging excessive force, failure to train, and false arrest (Dkt. #27). On August 10, 2015, Porter filed his First Motion for Summary Judgment (Dkt. #33). On August 24, 2015, Bishop filed a response (Dkt. #49) and an Appendix in Support of Plaintiff's Objections to Darius M. Porter's Summary Judgment Evidence and Brief in Support of Plaintiff's Response to Defendant Darius M. Porter's Motion for Summary Judgment (Dkt. #50). On September 9, 2015, Porter filed his Reply to Plaintiff's Response to Defendant Darius M. Porter's First Motion for Summary Judgment (Dkt. #65). On September 12, 2015, Bishop filed his Sur-reply to Defendant Porter's Reply to Plaintiff's Response to Defendant Darius Porter's Motion for Summary Judgment (Dkt. #70).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey*

*Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor…unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

As a preliminary matter, Bishop clarified that he is not pursuing claims of "failure to

train" or "false arrest" against Porter, but against Defendant City of Denton (Dkt. #49 at p. 25). Therefore, the issues remaining for summary judgment consideration are whether Porter used excessive force against Bishop, and whether Porter is entitled to the defense of qualified immunity.

*Excessive Force*

Bishop alleges that Porter's actions violated Bishop's right to be free from excessive force. To establish a claim of excessive force against Porter, Bishop must demonstrate: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (citations omitted). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Id*. at 167 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Porter argues that Bishop cannot establish that his injury resulted *only* from Porter's use of force. Porter argues that Bishop's intoxication contributed to his injury, and thus, Bishop is unable to establish that the force was the sole cause of his injury. The only admissible evidence offered by Porter is a surveillance video of the incident at issue.[1] After reviewing the video, the Court finds that there is sufficient evidence to raise an issue of fact regarding whether Porter's use of force was the sole cause of Bishop's injury.

The present case is very similar to *Geils v. Patin*, in which a pretrial detainee claimed that an officer used excessive force when he slammed the detainee's head into a lockbox during the

---

[1] As discussed in the Court's memorandum opinion and order on the motions to strike summary judgment evidence, the only summary judgment evidence Porter submitted was attached to his reply (Dkt. #65). This is a violation of Local Rule CV-56(d), which requires that summary judgment evidence be "cited in the motion for summary judgment or the response thereto." Thus, the only part of Porter's summary judgment evidence that is admissible is the surveillance video because Porter argues that this is a better and more complete version of the video that Bishop previously attempted to submit as a video (Dkt. #78 at pp. 12-13). The video was submitted along with a certificate from the city secretary swearing that it is a true and accurate copy of a surveillance video (Dkt. #65-3).

book-in process. 941 F. Supp. 2d 722, 725.  In *Geils*, the officer claimed that he used a reasonable amount of force in pulling the non-compliant detainee to a standing position, but the detainee's intoxication caused him to propel forward and sustain injury.  *Id.*  However, after reviewing the surveillance video the court found that while the detainee was verbally uncooperative and disrespectful, he was not physically resisting or threatening toward any officers at any time leading up to the incident.  *Id.* at 728.  Additionally, the court found that the officer's secure hold on the detainee, and his control over the detainee's movements through the point of impact, established that it was the officer's use of force and not the detainee's drunkenness that caused the injury at issue.  *Id.*

In the current case the facts are substantially similar.  Like *Geils*, the surveillance video demonstrates that Porter had control of Bishop's movements at the time of the incident at issue. Likewise, Bishop has provided an expert report that maintains that the injury sustained by Bishop was the fault of Porter (Dkt. #49-1).  The Court finds that Bishop has established that a material question of fact exists as to whether Porter's use of force was the sole cause of Bishop's injury.

Porter also argues that Bishop failed to produce evidence that Porter's use of force was excessive or unreasonable.  Courts look at the factors described in *Graham* when determining if an officer's actions were excessive or unreasonable: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others, and," (3) "whether he is actively resisting [.]"  *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (quoting *Graham*, 490 U.S. at 396 (internal quotation marks omitted)).[2]  Porter argues that, given

---

[2] Porter argues that the reasonableness of jailors' actions should be evaluated differently from that of other law enforcement officials.  Porter cites a recent Fifth Circuit case that found that "jailors were entitled to qualified immunity at the summary judgment stage in a case where a naked pretrial detainee . . . was shot twice with a pepperball gun after refusing to comply with a 'squat and cough' order during a strip search – even after having

the need to search Bishop and "control a non-compliant prisoner," his use of force was reasonable (Dkt. #33 at p. 5).[3]

Bishop points out that the crime of public intoxication is a class C misdemeanor, and therefore, this factor weighs against the reasonableness of Porter's actions (Dkt. #49 at p. 26) (citing Tex. Penal Code § 49.02(c)). Porter argues that while the crime of public intoxication is not severe for the purposes of our analysis, the Court should instead consider the severity of any crime that Bishop *could have* been violating by having any number of dangerous and illegal objects on his person (Dkt. #65 at p. 7) (stating that "all reasonable corrections employees should presume Plaintiff was committing a severe crime" and citing several criminal statutes making it illegal to have items such as deadly weapons in penal institutions). Porter's interpretation of *Graham* is erroneous and is not supported by the applicable case law. *See Singleton v. Darby*, 609 F. App'x 190, 202 (5th Cir. 2015) (considering Singleton's minimal crime of obstructing traffic and not considering potential crimes she could have been committing, such as possession of illegal substances, even though the use of force occurred before she was searched). Thus, Bishop has demonstrated that the relatively weak severity of his alleged crime suggests that whether the use of force was reasonable is a question of fact.

Next, Porter argues that Bishop threatened the safety of the officers at the time of the

---

already complied with that instruction once" (Dkt. #65 at p. 8) (quoting *Dawson v. Anderson Cty., Tex.*, 566 Fed. App'x. 369 (5th Cir. 2014) (per curiam)). However, *Dawson* does not have precedential value, and it is distinguishable because the *Dawson* court found that the jailors' use of force was "measured." Likewise, the dissent argued that the majority made a mistake by not applying the *Graham* factors. *Dawson*, 566 Fed. App'x. at 376-78. Several courts within the Fifth Circuit had applied the *Graham* factors specifically to *jailors* in cases where pretrial detainees claim excessive force. *See Geils*, 941 F. Supp. 2d 722; *Roach v. Bandera Cty.*, No. CIV.A.SA-02-CA-106XR, 2004 WL 1304952, at *6 (W.D. Tex. June 9, 2004); *Smith v. Holzapfel*, 739 F. Supp. 1089, 1095 (E.D. Tex. 1990).

[3] Alternatively, Porter argues that he is not liable under section 1983 because Bishop's injuries are the result of "simple negligence or mistake" (Dkt. #33 at p. 5). Porter argues that his actions cannot have been excessive because he could not foresee that Bishop would be injured. This argument is unpersuasive. Whether or not the officer intended to violate Bishop's rights is not a relevant inquiry in cases involving claims of excessive force because "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them [.]" *Graham*, 490 U.S. at 397.

incident. Porter again argues that Bishop could have had any number of dangerous items on his person that would compromise the safety of the officers and other detainees within the facility. Bishop argues that it would be unreasonable for an officer to perceive him as a threat, and relies on an expert report for support of his contention (Dkt. #49-1 at ¶ 13). Upon review of the relevant evidence, the Court finds that Bishop has established that this is a question of fact that is appropriate for a jury to determine.

Finally, Porter argues that while Bishop may not have been actively resisting, he was not complying with the search. However, non-compliance is distinct from resisting arrest. *See Geils*, 941 F. Supp. 2d at 730 ("Geils' stubborn refusal, in the context it occurred, is insufficient as a matter of law to justify the amount of force employed [.]"). Upon examining the situation and the force at issue, the Court finds that Bishop has presented evidence regarding every element of excessive force, and thus Porter's motion for summary judgment on the issue of excessive force should be denied.

*Qualified Immunity*

Porter argues that he is entitled to qualified immunity. "Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (citing *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). This standard, even on summary judgment, "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). "The doctrine of qualified immunity shields government officials from liability when they are acting within their discretionary authority, so long as their conduct does not violate clearly established statutory or constitutional

law of which a reasonable person would have known." *Wallace v. Cty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Supreme Court has established a two-part test to be applied in determining whether the presumption of qualified immunity is to be overcome. "First, a court must decide whether a plaintiff's allegation, if true, establishes a violation of a clearly established right." *Hernandez ex rel. Hernandez v. Texas Dep't of Protective and Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004). "Second, if the plaintiff has alleged a violation, the court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident." *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Id.* Analysis of these issues does not need to proceed in a specific sequence. *Pearson v. Callahan*, 555 U.S. 223 (2009). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As discussed above, the Court concludes that Bishop has presented sufficient evidence to establish that a question of fact exists as to whether Porter violated Bishop's right to be free from the use of excessive force. However, Porter argues that his conduct was not a violation of clearly established law. To support this contention, Porter cites Justice Alito's dissent in *Kingsley v. Hendrickson*, which states that it has not been determined whether a pretrial detainee may bring a Fourth Amendment excessive force claim against a detention facility employee. 135 S. Ct. 2466, 2479 (2015). However, the Fifth Circuit has allowed pretrial detainees to assert Fourth Amendment excessive force claims against detention facility employees. In *Kitchen v. Dall. Cty., Tex*, the Fifth Circuit stated that

> "[b]ased on the close relationship . . . between [the] Fourteenth Amendment and either Fourth or Eighth Amendment excessive force standards' . . . the theory of bystander liability is likewise applicable to claims for use of excessive force against pretrial detainees. As a general matter, moreover, this rule constituted clearly established law for the purposes of qualified immunity in this case. Indeed, prior to January 2010, the rule had already been applied consistently by district courts throughout the Fifth Circuit in cases involving both pretrial detainees and prison inmates."

759 F.3d 468, 480 (5th Cir. 2014). If bystander liability for excessive force based on the Fourth Amendment was clearly established law as of January 2010, direct liability for excessive force was also clearly established. Therefore, within the Fifth Circuit, there was clearly established law at the time the event at issue occurred that detention facility employees could be held liable under the Fourth Amendment for using excessive force against pretrial detainees.

The Court now turns to whether or not Porter's conduct was objectively reasonable. The relevant question is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202. Porter maintains that Bishop must show that he violated a standard, requirement, or procedure as evidence that Porter was unreasonable. Bishop's summary judgment evidence includes an incident report that states that Porter violated his own department's procedure (Dkt. #49-3). Bishop has submitted summary judgment evidence that is sufficient to create a question of fact regarding whether other officers would find it clear that Porter's actions were unlawful. As Porter urges, it may be reasonable for a jailer to use measured force to have a detainee comply with a search request. However, considering the facts in the light most favorable to Bishop, it may not be reasonable for an officer to perform the technique Porter used in the situation at issue. Simply put, Plaintiff has demonstrated that a question of fact exists as to whether it would be clear to a reasonable officer that Bishop's actions were unlawful.

9

## CONCLUSION

It is therefore **ORDERED** that Defendant's First Motion for Summary Judgment (Dkt. #33) is hereby **DENIED**.

**SIGNED this 8th day of December, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE